Kyle, J.
The plaintiff brings this action upon a policy of insurance issued by the defendant company on the life of Walter Guy Frush.
The ease is submitted upon the petition and the answer and the agreed statement of facts. There is no dispute as to the is *429 suance of the policy; that all the terms were complied with by the insured; that due notice and proof of death of the insured •was made to the company with demand for $1,000 by the plaintiff as the beneficiary under the policy.
The issue presented by the pleadings and agreed statement of facts is as to the effect of the following provision in the policy:
‘ ‘ This policy shall be null and void, except for the amount of premium paid, if the insured shall die within one year by self destruction, whether sane or insane; or if the insured shall at any time engage in military or naval service in time of war (the militia not in actual service excepted) unless a special written permit therefor has been obtained from the company.”
The policy was issued on the 16th day of June, 1916. On the 20th day of July, 1918, Walter Guy Frush was drafted into the military service of the United States, the United States being then engaged in war with the governments of Germany and Austria Hungary. While the agreed statement of facts states that we were at war with Bulgaria and Turkey, we were not and have not been at war with Turkey,, and I think also not with Bulgaria. On the 20th day of July, 1918, he was enrolled as a soldier, and up until the 9th day of October, 1918, the date of his death. He ivas located at Camp Sherman and while there contracted the disease known as the Spanish Flu, from the effects of which he died on said 9th day of October, 1918.
The defendant claims that under the provision of the policy above given the death of the insured during military service, as above stated, voided the policy, and that the plaintiff is only entitled to recover the amount of premiums paid on the policy amounting to $116.92, which the defendant company stands ready to pay.
' The plaintiff claims that the insured was not engaged in military service within the meaning of the exception above given provided in the policy, and it is also contended that the insured was not engaged in combat service, and did not die as the result of such military service, and that nothing that he did in the military service hastened or occasioned his death.
The questions presented for consideration are:
Is the provision of the policy, in so far as it prohibits the insured from engaging in military service, against public policy? And
*430 Would that provision in policies of insurance tend to discourage entering military service, and be an attempt on the part of the company to grant or withhold permission, and be an exercise of a power and influence which would be against public good?
Public policy has been defined in the case of the Northwestern Life Insurance Company v. Coshocton Glass Company, 13 Nisi Prius, New Series, page 239, as follows:
“Public policy is that principle of law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against' the public good. ’ ’
The questions of public policy are dealt with in the case of Hard et al v. Harris et al, 1 C.C(N.S.), page 113. In the opinion the court say:
“It is a well established principle of law in this country that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. If a contract binds- the maker to do something that is opposed to the public policy of the state or nation, it is void, however solemnly made. In applying this rule to particular cases, however, much difficulty is met with. Public policy is in its nature uncertain and fluctuating (23 Am. & Eng. Enc. of Law, 2nd Ed., 455.) ; its limits can not be determined by the courts with -any exactness. The Legislature can and does define the public policy of the state. Any contract in contravention of a statute would be against public policy; so, too, many things not forbidden by express legislative enactment are against public policy, and the courts have repeatedly set aside contracts which they have determined to be against good government and the spirit of our institutions. Public opinion is usually prescribed by the people before it is enacted into the statute law.
“If the contract alleged in the petition tended to create the results claimed by counsel for the plaintiffs in error as necessarily flowing from it, it would be against public policy, and should not be enforced whether such results really did follow or not. Such results, it is admitted, were not contemplated by the parties when they entered into the contract. If the public service is affected by his contract, it is incidentally. The petition does not disclose that any of the parties, plaintiffs or defendants, were in the military service at the time the contract was entered into. The contract was not in contravention of 'any statute. That public injury would result from this contract can not be a matter of opinion; it must be free from doubt.” ' .'
*431 I have no doubt that voluntary enlistment in the army would be, more or less, affected in the minds of some if they were insured and knew that entering military service would forfeit their insurance.
That the insured in this case was drafted would not affect the fact that such provision in the policy would deter voluntary enlistments, and if that were the effect it would be against public policy, and, as stated in the above cited case, if it tended to create that result as necessarily flowing from it, it would be against public policy.
In tffe ease of Welts v. Isurance Company, 48 New York, p. 34, the first syllabus is as follows:
“A provision in a policy of life insurance forfeiting the policy in case the assured shall enter into any military or naval service without the consent of the company, includes only such service as will require the person entering it to do duty as a combatant. An employment therefore, by military authorities, in constructing a railroad bridge, is not within the prohibitions of the policy, and does not invalidate it.
“Held, that the language of the proviso included only death from casualties or consequences of war or rebellion carried on or waged by authority of some de fcócto government; that this case did not come within that limit, and that defendant was liable.”
In that case the question turned upon the fact that the insured was employed by the military authorities to construct a railroad bridge, and such employment by the military did not invalidate the policy.
If you carry out the language and principles that seem to be included in that case it would be necessary for the insured to come to his death from casualties or consequences of the war. And there is no doubt in mind that the insurance company could protect itself against a liability from the death of an insured which was occasioned by the casualties or consequences of war.
The provision of the policy is “if the insured was at any time engaged in military or naval service in time of war” the policy should be void.
In order to come within the meaning of that clause it seems to me that such engagement in military service should be the cause or occasion of the death of the insured in order for the company to escape liability. If the death of the insured was *432 caused by something outside of his military service, and which might have occurred in the same way if he had not been in military service, then the service he was engaged in was not the occasion of his death.
Engagement in military service means to expose to dangers which were not incident to civil life. But, as is well known, the danger in civil life was just as great as in military service in respect to the disease called the “flu.”
The insured in this ease did not come to his death by reason of his induction into military service. Under the terms of the policy to engage in military service means to be exposed to dangers and perils of life not incident to civil life, and if the death of the insured was not occasioned or caused by such military service the company would be liable for the full amount of the policy.
Therefore, it is my opinion that the provision in the policy, so far as it makes such policy void upon entering into military or naval service, would tend to hinder and deter volunteer service and would be against public policy. It may be noted as a fact that it would have been impossible to have raised a volunteer army to have met the needs of the late war, aud how far the elements of insurance policies might have deterred men from volunteering would be hard to tell.
The policy of insurance was not based upon the exposure o£ the insured in military service, and the company- would have the right to defend if the engagement in military service was the occasion or cause of the death of the insured. It would, in that case, be a complete defense to an action on the policy, except as to the repayment of premiums already paid. In this ease the drafting into the military service and the entering of such service, as shown by the agreed statement of facts, was not the occasion or cause of the death of the insured. Therefore, the company is liable to the plaintiff for the full amount of the face of the policy, and a judgment may be entered accordingly.